## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SJ MEDCONNECT, INC.,
a Delaware Corporation,

      Plaintiff,

KENNETH (DANIEL) BOICE,
an Individual,

      Defendant

_____/

Case No.: _____

**TEMPORARY/PRELIMINARY AND
PERMANENT INJUNCTIVE RELIEF
REQUESTED**

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff SJ MEDCONNECT, INC. d/b/a THALAMUS ("Plaintiff" or "Thalamus") hereby sues Defendant KENNETH (DANIEL) BOICE ("Defendant" or "Boice") for violation of the Federal Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836), the Federal Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), misappropriation of trade secrets under the Florida Trade Secrets Act ("FTSA") (Fla. Stat. § 688.001 *et seq.*), violation of Florida's Computer Abuse and Data Recovery Act ("CADRA") (Fla Stat. § 688.80), as well as related violations and breaches of the common law of the State of Florida (including breach of contract, breach of a duty of loyalty, as well as fraud).  In support, Thalamus alleges as follows:

## THE PARTIES

1.      Thalamus is a corporation organized and existing under the laws of the State of Delaware with its headquarters at 77 Alviso St, Santa Clara, California 95050, and with regional offices in Nashville, Tennessee at 41 Peabody Street, Nashville, TN 37210.

2.      Boice is a former Thalamus employee who resides, upon information and belief, at 431 North Fletcher Avenue, Fernandina Beach, Florida 32034.  Upon further information and belief, Boice is a domicile and resident of Nassau County, Florida.

## JURISDICTION AND VENUE

3.      This action arises under both the DTSA (18 U.S.C. § 1836, *et seq*) and the CFAA (18 U.S.C. § 1030).  Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1331. Supplemental jurisdiction over the state law claims is appropriate under principles of supplemental jurisdiction, 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction because Boice, under information and belief, both resides and is domiciled in the State of Florida.

5.      Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400 because Boice resides in this district and division, a substantial part of the events and omissions giving rise to Thalamus's claims occurred in this district and a substantial part of the property that is the subject of Thalamus's claims is located in this district.

## BACKGROUND AND GENERAL ALLEGATIONS

6.      Thalamus provides a cutting-edge comprehensive graduate medical education interview scheduling platform that connects residency and fellowship applicants with program administrators for interview scheduling, management and travel coordination.

7.      Thalamus offered Boice a position as Senior Solutions Architect via a January 15, 2020, offer letter.  Boice accepted the offer on January 16, 2020.  A true and correct copy of the offer letter, executed by Thalamus and Boice, is attached as **Exhibit A**.

8.      As a condition of his employment, Boice also entered into a Proprietary Information and Inventions Agreement, a true and correct copy of which is attached as **Exhibit B** (the "PIIA").

9.      On January 16, 2020, Boice also executed a copy of the SJ Medconnect, Inc. Employee Handbook (the "Handbook").  A true and correct copy of the Handbook, as executed by Boice, is attached as **Exhibit C.**

10.     On the same date, Boice executed a copy of Thalamus's Acceptable Use Policy (the "AUP").  A true and correct copy of the AUP, as executed by Boice, is attached as **Exhibit D**.

11.     In connection with his employment and has part of his compensation, on February 21, 2020, Thalamus entered into a Restricted Stock Purchase Agreement with Boice (the "RSPA"),

pursuant to which Thalamus issued to Boice 250,000 shares of Thalamus Common Stock (the "Shares"), subject to vesting.   A true and correct copy of the RSPA, as executed by Boice, is attached as **Exhibit E.**

12.     At all times during his employment with Thalamus, Boice identified himself as Keith Boice.  Thalamus only later came to learn his real name is Daniel Boice.

13.     Boice began working at Thalamus on or about January 20, 2020.  He was a fully remote worker.  Upon information and belief, at all times relevant to the allegations contained herein, Boice physically worked in Nassau County, Florida when providing services to Thalamus.

14.     As a Senior Solutions Architect, Boice was responsible for designing and developing the Thalamus application system.  He was also responsible for managing the full lifecycle of the development of Thalamus's product, including strategic planning, product design, quality assurance, and problem resolution to meet company objectives and ensure compliance and quality standards.

15.     Because Boice's role involved working with and improving existing Thalamus software service offerings, as well as planning and building out new Thalamus features, Boice received and had access to (pursuant to the protections afforded under **Exhibits B** through **D)** some of Thalamus's most sensitive trade secrets.

16.     Among other things, Boice had access to the source code for Thalamus's entire platform in production ("Production Code"), the source code for all new Thalamus products and features being developed ("New Product Code"), and proprietary design and architecture materials relating to current and future Thalamus products and features ("Architecture Materials").

17.     

18.     On July 24, 2020, Daniel Dumpit, a Pre-Trial Services Officer for the United States District Court for the Middle District of Florida – Jacksonville Division, contacted Thalamus.  Mr.

Dumpit told Thalamus that Boice (under the name Daniel Boice) had been indicted and arrested and was awaiting a bail hearing.  Mr. Dumpit asked Thalamus whether Boice was still employed by Thalamus, which at that point he was.

19.     Later that day, Thalamus learned disturbing news about the nature of the charges brought against Boice.  Thalamus found a Twitter post by the Department of Justice ("DOJ"), available at https://twitter.com/TheJusticeDept/status/1286714591175741440.  A true and correct copy of the Twitter post is attached hereto as **Exhibit F**.  The Twitter post announced: "Former CEO and Founder of Technology Company Charged in Investment Fraud Scheme."  It also links to a press release (the "Press Release").

20.     On that same day, Thalamus visited the website linked at the Twitter post, which contains the Press Release, which can be found at https://www.justice.gov/opa/pr/former-ceo-and-founder-technology-company-charged-investment-fraud-scheme.  A true and correct copy of the Press Release is attached hereto as **Exhibit G**.  The Press Release explains that Boice was indicted on charges of wire fraud, securities fraud, and money laundering as part of an alleged scheme to fraudulently obtain investor funds in connection with a previous venture of his, named Trustify Inc.  Boice is alleged to have fraudulently induced the investment of $18.5 million in funds and of misappropriating invested funds for his personal use.

21.     On July 24, 2020, Thalamus downloaded a copy of the indictment (the "Indictment") filed against Boice from the website https://www.justice.gov/opa/press-release/file/1297501/download.  A true and correct copy of the Indictment is attached hereto as **Exhibit H**.

22.     In addition, on that same date, Thalamus downloaded a copy of a complaint filed by the Securities and Exchange Commission against Boice (the complaint, the "SEC Complaint") found at https://www.sec.gov/litigation/complaints/2020/comp-pr2020-162.pdf), arising from the same alleged scheme.  A true and correct copy of the SEC Complaint is attached here as **Exhibit I.**

23.     After learning this information, Thalamus began investigating Boice's conduct at

Thalamus.  Thalamus discovered that Boice had misled Thalamus on a number of fronts.

24.     In the resume he submitted before Thalamus and during his interviews with Thalamus's CEO, Jason Reminick, Boice had misrepresented his job history, including concealing his role or any of his activities at Trustify (i.e. it was omitted from his resume and never mentioned during his interview), the reasons why he left a prior prominent position at the College Board, and even his name.

25.     Upon information and belief, Boice knew the misrepresentations he made during the interview process with Thalamus were false.  Further, Boice made such misrepresentations with the intent that Thalamus rely on them in making its determination to hire Boice.

26.     Thalamus did, in fact, rely on Boice's misrepresentations in making the decision to hire Boice and enter into the RSPA.  Had Boice told the truth about his personal and professional background during the interview process – including divulging his real name to allow Thalamus to find the damaging publicly available information about him – Thalamus would not have offered him a position with the company nor would it have entered into the RSPA.

27.     Thalamus's reliance on Boice's misrepresentations in hiring him and entering into the RSPA was reasonable, given that Thalamus made clear to Boice that Boice's job would be terminated if he engaged in dishonesty during the interview process.

28.     In addition, Boice misrepresented the amount and extent of work he performed, giving the false impression of making significantly more progress on Thalamus product development than reality.

29.     On the evening of July 24th, Reminick had a telephone call with Boice, joined by Thalamus's Chief Operating Officer, Elizabeth Cavagnolo ("Cavagnolo"). During that phone call, Thalamus terminated Boice's employment effective immediately.  Reminick and Cavagnolo requested that Boice return all Thalamus property directly to Reminick.

30.     As a remote employee, Boice had a number of pieces of Thalamus equipment. This included:

- Lenovo T580 laptop with asset ID: WKS-LTP-04 (the "Laptop")

- Lenovo ThinkPad Pro docking station

- Two Acer V276HL 27" monitors

- ViewSonic VA2246M-LED 22" Full HD 1080p LED Monitor

- Logitech Wireless combo mouse and keyboard

- HP Deskjet 1112 Compact Printer and HP 63 Ink Cartridges

- iPhone XR, phone number 408-533-2XXX (the "Phone")

- Two 6-Outlet Surge Protector Power Strips

- USB Thunderbolt 3 to DVI Adapter

31.     He has not returned any of the equipment above (the "Thalamus Property"). Pursuant to the Handbook, "Any equipment [Thalamus] offers belongs to and is owned by SJ MedConnect, Inc. and [employee] may not sell it or give it away."   **Exhibit C** at 16

32.     Boice regularly used a personal computer to perform work for Thalamus (the "Personal Computer").   This included working on Thalamus source code on the Personal Computer.

33.     Section 4 of the PIIA, signed by Boice, states "Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies) . . . ."   **Exhibit B** at Section 4.   "Proprietary Information" is defined as "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence." *Id.*

34.     Boice has not returned any Proprietary Information to Thalamus since his termination.

35.     Based upon the access Boice had to Thalamus's systems, Boice had the ability to retain local copies of the Production Code, New Product Code, Architecture Materials, and ▮▮▮▮▮▮▮ among other things.  Boice had the ability to download these materials to the Laptop

and to transfer them to the Personal Computer or to the Phone.

36.     Disturbingly, it recently became clear that Boice did, in fact, retain Thalamus Proprietary Information.

37.     

38.     Github is a cloud service widely used by computer programmers and technology companies to store and share source code.  Thalamus uses Github as part of its development operations.

39.     The API Credentials were posted on the Github repository that Boice regularly used to interact with and commit code to Thalamus while he was a Thalamus employee (the "Boice Repository").

40.

41.     Thalamus uses Twilio for a variety of its core products.  Twilio is a communications leader and Thalamus products are built around integrating with Twilio products.  The publishing of the Twilio API Keys damages Thalamus's relationship with Twilio

42.

43.     In addition, the Boice Repository contained source code for several different proof of concept products that Boice was involved in working on for Thalamus (the "POC Source Code Repositories").

44.    Thalamus visited the URL for each of the POC Source Code Repositories on the morning of August 1, 2020.  At that time, each of the POC Source Code Repositories were made publicly available by Boice.

45.    Each of the POC Source Code Repositories contained Thalamus source code.

46.    While the POC Source Code Repositories do not contain production code for any products that are currently available, they contain source code and proprietary information about yet-to-be-released Thalamus products.  By making the POC Source Code Repositories publicly available, it gives Thalamus competitors insight into Thalamus's future product plans and the ability to get a head start on unfairly competing with Thalamus by borrowing source code and architecture information that was illicitly made public.

47.    Moreover, Boice did not simply make these items public.  He is apparently actively working on these products.  Boice was committing code to one POC Source Code Repository as recently as August 1.  Boice had no authorization to still have access to that code, much less modify it.  Attached as **Exhibit K** is a screenshot detailing changes Boice was making to the code in this repository on August 3, 2020.

48.    As soon as Thalamus discovered that these items had been made public, it submitted a DMCA takedown notice to Github in the afternoon of August 1, 2020.

49.    Boice is now trying cover his tracks.  As of the end of the day on August 1, 2020, Boice made all of the POC Source Code Repositories private, except for two.

50.    Making the POC Source Repositories private does not remove them from Github altogether but simply removes them from public view.  Boice still has access to them himself and can make them public again at any time.

51.    Thalamus has also discovered Boice's unauthorized access and use of Thalamus's Docker account.  On August 2, 2020, as part of Thalamus's searches through Boice's company email account, Thalamus came across an email from the e-mail address no-reply@notify.docker.com to Boice's Thalamus e-mail address, dated July 30, 2020 (the "Docker Email").  A true and correct copy of this e-mail is attached hereto as **Exhibit L**.  No-

replay@notify.docker.com is associated with a company called Docker.  Docker offers a platform-as-a-service product used by application developers to deliver software in packages called "containers."

52.     Boice set up a Docker account for Thalamus on July 7, 2020, under his Thalamus e-mail address and used it as part of his employment.  A Thalamus credit card was used to pay for the account.

53.     Boice was not authorized to access Thalamus's Docker account post-termination.

54.     The Docker Email contained an alert that a repository thalamusdev/api-prod was made public (the "API-PROD Repository").  That means that the entire API-PROD Repository was publicly available.  Boice was the only one who had the credentials to access Thalamus's Docker account until August 2, 2020.

55.     

56.     

57.     In reviewing the activity in the Thalamus Docker account, Thalamus also noticed that a different repository, Thalamusdev/video-dev (the "Video-Dev Repository"), has had 3600 views. The Video-Dev Repository contained source code for a test server for Thalamus's video chat.  Given the Video-Dev Repository could not have been posted to Docker until at least July 7, 2020, and was only for a test server (i.e. not available for actual Thalamus users), the existence of 3600 views of the repository is most consistent with Boice having made the repository public. Upon information and belief, Boice did make that repository public.

58.     Given the extensive access Boice had to Thalamus Proprietary Information and source code, his ability to store such data locally, his known proclivity for working with Thalamus

Proprietary Information on his Personal Computer, and the fact that he has demonstrably retained, continues to use, and even made public sensitive Thalamus Proprietary Information and source code, Thalamus is at an existential risk if Boice is able to retain access to and ability to use the Thalamus Proprietary Information and source code in his possession.

59.     It is impossible to know all of the harm that Boice could cause by publicizing the Thalamus materials to which he had access.  By way of example, Boice had access to and the ability to locally store the Production Code, representing all of the source code for Thalamus's products currently available to customers.  The Production Code could be used by competitors to gain unfair competitive advantage and quickly improve or build features copied from Thalamus.

60.     ████████████████████████████████████████████

████████  Someone viewing this data could obtain invaluable information about how customers interact with Thalamus's product and, on that basis, unfairly improve their own products.

61.     The likelihood of these harms coming to fruition are exacerbated given what Thalamus has learned about Boice's dishonesty while applying for his position at Thalamus, his misrepresentations to Thalamus about the work he was performing, and his attempts to evade discovery of his misdeeds.

62.     In addition, Boice is currently facing serious Federal charges of wire fraud, securities fraud, and money laundering.  **Exhibit H**. The DOJ alleges that Boice solicited $18.5 million in investor funds by "materially misrepresent[ing] the growth and size of Trustify's business, other aspects of Trustify's performance, and the use of investor funds." **Exhibit H** at ¶ 6.  The DOJ further alleges that "[i]n quarterly investor update e-mails and on phone calls and in-person meetings with investors and potential investors, BOICE would make additional material misstatements regarding Trustify's performance, such as falsely inflating Trustify's revenue growth." *Id.* at ¶ 8.  The DOJ also alleges that he not only lied to potential and actual Trustify investors, but to the SEC.  *Id.* at ¶ 10.  Moreover, according to the DOJ, Boice engaged in these dishonest activities in order to "divert money invested by Trustify shareholders to his own personal benefit and to fund his lavish lifestyle." *Id.* at ¶ 12.  And importantly, the DOJ emphasizes that he

expressly continued lying to investors in order to evade the discovery of his misdeeds, by means of "lull[ing] them into a false sense of security to keep them from requesting the return of their funds once they had investors."  *Id.* at ¶ 13.

63.     The activity alleged by the DOJ matches what Thalamus has learned about Boice's conduct at Thalamus.  He lied to Thalamus to induce the company to hire him, he lied about his performance while at Thalamus, and he made further misrepresentations to lull the company into a sense of security so that Thalamus did not discover he had not been performing his job.

<u>COUNT ONE</u>

**[Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836]**

64.     Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

65.     Thalamus takes reasonable measures to protect its trade secrets.  All of its employees who are given access to company confidential information are required to enter into a PIIA, in substantially the form attached as **Exhibit B**, which contractually obligates employees to maintain the confidentiality of company information and to return any company data immediately upon termination.  All company employees are also required to execute the AUP in the form attached as **Exhibit D**.  All material company systems are password protected.  It regularly enters into non-disclosure agreements with customers before disclosing confidential information.

66.     Thalamus has invested significant time and resources into developing its trade secrets.  Measures are taken to ensure the confidentiality of this information because Thalamus derives significant independent value from maintaining the secrecy of the trade secrets to which it knows or has good reason to believe Boice has retained access, including the Production Code, Architecture Materials, and New Product Code (including the code in the POC Source Code Repositories) (collectively the "Trade Secrets").  If the Production Code, Architecture Materials, or New Product Code were made public or given to competitors, Thalamus competitors would be able to unfairly compete with Thalamus, copy Thalamus features, and get insight into Thalamus's product plans.

67.    The Thalamus information, files, and data improperly accessed and used by Boice after his termination were used in and affected interstate commerce in that such information, files, and data were created and used by Thalamus to deploy and sell its products and services throughout the United States.

68.    Accordingly, the above-described information constitutes "trade secrets" under the Defend Trade Secrets Act (DTSA).

69.    Boice obtained access to and knowledge of the Trade Secrets as an employee of Thalamus and under a duty of confidentiality.  Boice also knew or had reason to know that his knowledge of the Trade Secrets was acquired under a circumstance giving rise to a duty to maintain the secrecy of that information or limit its use.

70.    Boice misappropriated the Trade Secrets by accessing, using and disclosing such data after his employment was terminated and he was prohibited from making any use of such data in any manner.

71.    Boice's actions constitute a misappropriation of trade secrets under the Defend Trade Secrets Act.

72.    Each act of misappropriation was done willfully and maliciously by Boice, thereby entitling Thalamus to exemplary damages and/or attorney's fees to be determined at trial under 18 U.S.C. § 1836(b)(3)(C) and (D).

73.    As a direct and proximate cause of respondent's misappropriation of the Trade Secrets, Thalamus has suffered damages in an amount to be proven at trial.

## COUNT TWO

### [Florida Trade Secrets Act, Fla. Stat. § 688.001 *et seq*.]

74.    Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

75.    Thalamus takes reasonable measures to protect its trade secrets.  All of its employees who are given access to company confidential information are required to enter into a PIIA, in substantially the form attached as **Exhibit B**, which contractually obligates employees to

maintain the confidentiality of company information and to return any company data immediately upon termination.  All company employees are also required to execute the AUP in the form attached as **Exhibit D**.  All material company systems are password protected.  It regularly enters into non-disclosure agreements with customers before disclosing confidential information.

76.     Thalamus has invested significant time and resources into developing its trade secrets.  Measures are taken to ensure the confidentiality of this information because Thalamus derives significant independent value from maintaining the secrecy of the trade secrets to which it knows or has good reason to believe Boice has retained access, including the Production Code, Architecture Materials, and New Product Code (including the code in the POC Source Code Repositories) ("Trade Secrets").  If the Production Code, Architecture Materials, or New Product Code were made public or given to competitors, Thalamus competitors would be able to unfairly compete with Thalamus, copy Thalamus features, and get insight into Thalamus's product plans.

77.     The Thalamus information, files, and data improperly accessed and used by Boice after his termination were used in and affected interstate commerce in that such information, files, and data were created and used by Thalamus to deploy and sell its products and services throughout the United States.

78.     Accordingly, the above-described information constitutes "trade secrets" under the FTSA.

79.     Boice obtained access to and knowledge of the trade secrets as an employee of Thalamus and under a duty of confidentiality.  Boice also knew or had reason to know that his knowledge of the trade secrets was acquired under a circumstance giving rise to a duty to maintain the secrecy of that information or limit its use.

80.     Boice misappropriated the trade secrets by accessing, using and disclosing such data after his employment was terminated and he was prohibited from making any use of such data in any manner.

81.     Boice's actions constitute a misappropriation of trade secrets under the FTSA.

82.     Each act of misappropriation was done willfully and maliciously by Boice, thereby entitling Thalamus to exemplary damages and/or attorney's fees to be determined at trial.

83.     As a direct and proximate cause of respondent's misappropriation of the trade secrets, Thalamus has suffered damages in an amount to be proven at trial.

<u>**COUNT THREE**</u>

**[Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*]**

84.     Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

85.     Thalamus's computers are used in or affecting interstate or foreign commerce or communication and are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2).

86.     Boice's improper and unlawful conduct as described above includes intentionally accessing Thalamus's protected computers without authorization, and accessing and copying confidential, proprietary, and trade secret information, constituting a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

87.     Boice knowingly, willfully and with the intent to defraud Thalamus, accessed Thalamus's protected computers without authorization or by exceeding authorized access to protected computers.  In doing so, Boice furthered his intended fraud and obtained confidential, proprietary, and trade secret information, constituting a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

88.     Boice knowingly accessed and transmitted Thalamus's confidential, proprietary, and trade secret information, and as a result of such conduct, intentionally, or recklessly, or without regard for his action, caused damage and loss to Thalamus's protected computers, constituting a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

89.     Thalamus has suffered damage and loss by reason of these violations, including, without limitation, (1) harm to its computer systems and its confidential, proprietary, and trade secret information; (2) impairment to the security of databases and the integrity of its confidential

credentials; (3) investigative and remedial time, labor and expenses, and (4) other losses and damage in an amount to be proved at trial, but in any event, in an amount well over $5,000 over a one year period.

## COUNT FOUR

### [Violation of Computer Abuse and Data Recovery Act – Fla Stat. 668.801 et seq.]

90.     Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

91.     Thalamus's computers are used in or affecting interstate or foreign commerce or communication and are "protected computers" within the meaning of the Computer Abuse and Data Recovery Act ("CADRA") – Fla Stat. 668.801 et seq.

92.     Boice's improper and unlawful conduct as described above includes intentionally accessing Thalamus's protected computers without authorization, and accessing and copying confidential, proprietary, and trade secret information, program and code, constituting a violation of CADRA.

93.     Boice knowingly, willfully and with the intent to defraud Thalamus, accessed Thalamus's protected computers without authorization or by exceeding authorized access to protected computers.  In doing so, Boice furthered his intended fraud and obtained confidential, proprietary, and trade secret information.

94.     Boice knowingly accessed and transmitted Thalamus's confidential, proprietary, and trade secret information, programs and code, and as a result of such conduct, intentionally, or recklessly, or without regard for his action, caused damage and loss to Thalamus's protected computers, constituting a violation of the Fla Stat. 668.801.

95.     Boice knowingly delivered Thalamus's technological access barriers (Thalamus Credentials) without authorization, causing further damage to Thalamus.

96.     Thalamus has suffered damage and loss by reason of these violations, including, without limitation, (1) harm to its computer systems and its confidential, proprietary, and trade secret information; (2) impairment to the security of databases and the integrity of its confidential

credentials; (3) investigative and remedial time, labor and expenses, and (4) other losses and damage in an amount to be proved at trial, but in any event, in an amount well over $5,000 over a one year period.

## COUNT FIVE

### [Breach of Contract]

97.     Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

98.     On January 16, 2020, Boice entered into the PIIA with Thalamus.

99.     Thalamus has fully performed all conditions, covenants and obligations under the PIIA, or the performance of those conditions, covenants and obligations has been prevented or excused by Boice's conduct.

100.     Boice breached the PIIA by failing to perform the conditions, covenants and obligations required on his part.

101.     In particular, the PIIA states:  "Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies) . . . ."  **Exhibit B** at Section 4.  "Proprietary Information" is defined as "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence."  *Id.*

102.     Contrary to the requirements under Section 4 of the PIIA, Boice continued to access and use Proprietary Information after the termination of his employment and after being directed not to access or use such Proprietary Information.

103.     In addition, contrary to the requirements under Section 4 of the PIIA, Boice failed to promptly return the Laptop (and the data contained thereon) to Thalamus upon termination.

104.     As a direct and proximate result of Boice's breach of the PIIA, Thalamus has been damaged in an amount to be proven at trial.

## COUNT SIX

### [Rescission]

105.    Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

106.    In connection with Thalamus entering into the RSPA with Boice, Boice made a series of false statements and material omissions of fact that, upon information and belief, he knew to be false when he made them or was reckless as to their falsity.  Boice misrepresented his job history, the reasons why he left a prior prominent position at the College Board, and even his name. He also omitted his involvement with Trustify, while maintaining that his resume contained a materially complete list of his prior professional endeavors.  Boice's failure to disclose his involvement with Trustify was a material omission that rendered his statements false and misleading.

107.    Boice made these statements with the intent that Thalamus would rely on them and that these statements would induce Thalamus to enter into the RSPA.

108.    Thalamus reasonably relied on Boice's false and misleading statements.  Given that Thalamus's execution of the RSPA was induced by fraud, requests a judicial declaration that the RSPA is rescinded and ordering restitution to Thalamus of the Shares.

## COUNT SEVEN

### [Fraud]

109.    Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

110.    In connection with Thalamus hiring Boice, Boice made a series of false statements and material omissions of fact that, upon information and belief, he knew to be false when he made them or was reckless as to their falsity.  Boice misrepresented his job history, the reasons why he left a prior prominent position at the College Board, and even his name.  He also omitted his involvement with Trustify, while maintaining that his resume contained a materially complete list

of his prior professional endeavors.  Boice's failure to disclose his involvement with Trustify was a material omission that rendered his statements false and misleading.

111.    Boice made these statements with the intent that Thalamus would rely on them and that these statements would induce Thalamus to hire Boice.

112.    Thalamus reasonably relied on Boice's false and misleading statements.

113.    As a direct and proximate result of Boice's fraud, Thalamus has been damaged in an amount to be proven at trial.

114.    In addition, Boice's conduct in defrauding Thalamus was willful, oppressive and malicious.  As a consequence, Thalamus is entitled to punitive damages in an amount to be proven at trial.

## COUNT EIGHT

### [Breach of Duty of Loyalty]

115.    Thalamus refers to and incorporates herein by reference, as though fully set forth herein, Paragraphs 1 through 63 inclusive.

116.    Boice was a Thalamus employee from January 20, 2020, to July 24, 2020.

117.    During his employment, Boice owed Thalamus a duty of utmost loyalty.

118.    Thalamus put reasonable trust and confidence in Boice not to act disloyally or to take actions to harm Thalamus's interests.

119.    Boice breached his duty of loyalty by lying about the work he was performing at Thalamus, and materially misrepresenting the status of significant projects assigned to him.

120.    Boice's statements and acts were calculated to harm Thalamus by delaying Thalamus's ability to roll out critical new products and features.

121.    As a direct and proximate result of Boice's breaches of his duty of loyalty, Thalamus has also suffered damages in an amount to be proven at trial.

122.    Boice's acts were willful, oppressive and malicious.  As a consequence, Thalamus is entitled to punitive damages in an amount to be proven at trial.

## **PRAYER**

WHEREFORE Thalamus prays for judgment in their favor against Boice as follows:

1.      For general and special damages in an amount to be proven at trial;

2.      For exemplary and punitive damages;

3.      For disgorgement of any profits associated with acts of unfair competition;

4.      For restitution of all sums unlawfully obtained by acts of unfair competition;

5.      For rescission and restitution;

6.      For pre-judgment and post-judgment interest;

7.      For reasonable attorney's fees, expenses and other costs of suit;

8.      For preliminary and permanent injunctive relief, seizure, and other equitable relief;

9.      For declaratory relief as set forth above;

10.     For such other and further relief as the court deems just and proper.

## **JURY DEMAND**

Plaintiff SJ MEDCONNECT, INC. d/b/a THALAMUS hereby requests a trial by jury on all issues so triable.

Respectfully submitted this 10th day of August, 2020.

*s/ Ryan T. Santurri*
Robert Thornburg
Florida Bar No. 630829
E-Mail: rthornburg@allendyer.com
Stephanie Vazquez
Florida Bar No. 101124
E-Mail: svazquez@allendyer.com
ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone:    (305) 374-8303
Facsimile:    (305) 374-8306

Ryan T. Santurri
Florida Bar. No. 15698
E-Mail: rsanturri@allendyer.com
ALLEN, DYER, DOPPELT
& GILCHRIST, P.A.
255 S. Orange Ave., Suite 1401
Orlando, Florida 32801
Telephone:    (407) 841-2330
Facsimile:    (407) 841-2343

-and-

Dhaivat H. Shah
(*pro hac vice request forthcoming*)
Email: ds@grellas.com
David I. Siegel
(*pro hac vice request forthcoming*)
Email: dsiegel@grellas.com
GRELLAS SHAH LLP
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile:  (408) 255-6350

*Attorneys for Plaintiff*
*SJ MEDCONNECT, INC.*
*D/B/A THALAMUS*

## VERIFICATION

I, Jason Reminick, hereby certify as follows:

1.  I am the Chief Executive Officer of SJ Medconnect, Inc. dba Thalamus ("Thalamus"). As such I am authorized to make this Verification on behalf of Thalamus.

2.  I have read the attached Verified Complaint and based on my personal knowledge, the factual allegations contained in the Verified Complaint are true.

3.  I declare under penalty of perjury that the foregoing is true and correct.


Jason Reminick


Executed on August 9, 2020