UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SJ MEDCONNECT, INC., etc.,

    Plaintiff,

v.                                                CASE NO. 3:20-cv-903-MMH-JBT

DANIEL BOICE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Plaintiff's Motion for Final Default Judgment Against Defendant ("Motion") (Doc. 87). The undersigned respectfully **RECOMMENDS** that the Motion be **GRANTED** to the extent stated herein. Specifically, the undersigned recommends that Plaintiff be granted all the relief it seeks and that default judgment be entered on all counts for which such judgment is sought, except for Count Three. The Court need not decide the issues presented by that count.

Plaintiff ("Thalamus") seeks default judgment on the following causes of action: Count One, Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; Count Two, Violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*; Count Three, Violation of the Computer Fraud and Abuse Act, 18 U.S.C.

§ 1030 *et seq*.; Count Five, Breach of Contract; Count Six, Rescission; Count Seven, Fraud; and Count Eight, Breach of Duty of Loyalty.[1]

On February 11, 2021, Plaintiff filed a Motion for Entry of Clerk's Default Against Defendant (Doc. 62), and default was entered on February 16, 2021 (Doc. 63). On November 16, 2021, Defendant made his only appearance in this case and filed Defendant's Motion for Summary Dismissal (Doc. 81), which was denied on January 3, 2022. (*See* Doc. 83.) Plaintiff now seeks entry of a final default judgment against Defendant for the following relief: damages totaling $283,548.09, rescission of a Restricted Stock Purchase Agreement ("RSPA") and cancellation of the 31,250 shares of Thalamus stock issued thereunder, and final injunctive relief.[2] (Doc. 87 at 21–24.)

## I.   Standard

Before the Court enters a default judgment in a case, a number of requirements must be met. A plaintiff must show, by affidavit or otherwise, defendant's failure to plead or otherwise defend a lawsuit, and a default must have been entered. Fed. R. Civ. P. 55(a). After entry of the default, the plaintiff must apply to the court for a default judgment, except in limited circumstances when application may be made to the clerk. Fed. R. Civ. P. 55(b). If a defendant is a minor or incompetent person, a default judgment may be entered only if the

---

[1] Plaintiff does not seek default judgment on Count Four. (Doc. 87 at 15.)

[2] The Court previously entered a Preliminary Injunction. (Doc. 33.)

defendant is "represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). In any action "in which the defendant does not make an appearance," the plaintiff must comply with the requirements of the Servicemembers Civil Relief Act ("SCRA"). 50 U.S.C. § 3931. Finally, the Court must ensure that it has jurisdiction over the claims and that the well-pled factual allegations of the complaint, which are deemed admitted upon entry of default, adequately state a claim for which relief may be granted. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1205–06 (5th Cir. 1975).

Rule 8 requires that a complaint contain "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)-(3). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 664, 678–79. Thus, in ruling on a motion for final default judgment, the Court must determine whether a sufficient factual basis is pled in the complaint for a judgment to be entered. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206.

## II.     Jurisdiction, Prerequisites, and Claims Stated

Upon review of the Complaint, the Motion, and other relevant filings, the undersigned recommends that a default judgment be entered as to Counts One, Two, Five, Six, Seven, and Eight.  The Court has federal question jurisdiction over Counts One and Three of the Complaint pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the remaining counts pursuant to 28 U.S.C. § 1367.  The Clerk entered a default on February 16, 2021.  (Doc. 63.)  Defendant failed to appear until nine months after the entry of default, and he has not moved to set aside the default.  (See Docs. 81 & 83.)  Because of Defendant's appearance in this case, the requirements of the SCRA do not apply.  *See* 50 U.S.C. § 3931(a).  Although Plaintiff did not attest that Defendant was neither a minor nor incompetent, a review of the docket in Defendant's recent criminal case shows that Defendant entered a guilty plea on December 3, 2020, which was accepted, and he was sentenced to serve a prison term of 97 months.  *See United States v. Boice*, No. 1:20-cr-167-TSE-1 (E.D. Va.) (July 22, 2020) (Docs. 23 & 37).[3]  Thus, it sufficiently appears that Defendant is neither a minor nor incompetent because the court would not have accepted a plea otherwise.

---

[3] "[A] court may take judicial notice of a 'document filed in another court . . . to establish the fact of such litigation and related filings.'" *Grayson v. Warden, Comm'r, Alabama Doc*, 869 F.3d 1204, 1225 (11th Cir. 2017) (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)).

### A. Count One

To state a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, Plaintiff must allege the following: "(1) the plaintiff owns a valid trade secret; (2) the trade secret relates to a product or service used in, or intended for use in, interstate commerce; and (3) the defendant misappropriated that trade secret." *It Works Mktg., Inc. v. Melaleuca, Inc.*, No. 8:20-cv-1743, 2021 WL 1650266, at *7 (M.D. Fla. Apr. 27, 2021) (citing *11th Cir. Pattern Jury. Instr. Civ.* 11.1.)

The undersigned recommends that Plaintiff has adequately pled a claim under the Defend Trade Secrets Act. First, Plaintiff alleges ownership of trade secrets—e.g., information, files, and data, including source code, production code, and other proprietary information related to Plaintiff's products. (Doc. 39 at 11–12.) Second, Plaintiff adequately alleges the interstate commerce element by stating that the information, files, and data are used "to deploy and sell its products and services throughout the United States." (*Id.* at 12.) Finally, Plaintiff alleges Defendant "misappropriated the Trade Secrets by accessing, using and disclosing such data after his employment was terminated." (*Id.*) Specifically, Defendant made the trade secrets publicly accessible on internet platforms such as Github (www.github.com) and Docker (www.docker.com). (*Id.* at 7–9.)

### B. Count Two

To state a claim under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*, Plaintiff must allege that "(1) it possessed a trade secret and (2) the secret was misappropriated." *Compulife Software Inc. v. Newman*, 959 F.3d

1288, 1310 (11th Cir. 2020) (quoting *Yellowfin Yachts, Inc. v. Barker Boatworks*, LLC, 898 F.3d 1279, 1297 (11th Cir. 2018)).  As stated above, Plaintiff alleges that Defendant misappropriated its trade secrets when he accessed and publicly disclosed its information, files, and data after being terminated.  (Doc. 39 at 12.)  Therefore, the undersigned recommends that Plaintiff has stated a claim under the Florida Uniform Trade Secrets Act.

### C. Count Three

To state a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, Plaintiff must allege that Defendant "(1) intentionally 'accessed' a computer, (2) lacked authorization or exceeded his authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000.00 to [Plaintiff]." *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010) (citing 18 U.S.C. § 1030(a)(2)(C)).  Regarding element (2), the Supreme Court has held that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him."  *Van Buren v. United States*, 141 S. Ct. 1648, 1662 (2021).  This definition of "exceeds authorized access" is in deliberate contrast to that of mere misuse of confidential information that an employee is otherwise given permission to access.  *Id.* at 1660.

Though Plaintiff alleges that Defendant accessed Plaintiff's computers "without authorization or by exceeding authorized access," it appears that

Defendant was given complete access, consistent with his employment responsibilities, to the information he allegedly misappropriated. (*See* Doc. 39 at 6–10.) Plaintiff argues that Defendant exceeded his authority by his misuse of the information, including after his termination. (*See* Doc. 87 at 13–14.) It is unclear whether such misuse meets the statutory definition of "exceeds authorized access." *See Van Buren*, 141 S. Ct. at 1660, 1662. However, the undersigned recommends that the Court need not decide this issue because Plaintiff is entitled to the same relief based on other counts.

### D. Count Five

To state a claim for breach of contract under Florida law, Plaintiff must allege the following: "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000). Plaintiff alleges that the parties entered into a valid contract, the Proprietary Information and Inventions Agreement ("PIIA") (Doc. 39-1 at 8–10), which states in paragraph 4: "[u]pon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies)." (Docs. 39 at 16; 39-1 at 9.) Plaintiff alleges that Defendant breached said provision by failing to return his company-owned laptop and other equipment and by continuing to access Plaintiff's proprietary information after he was terminated. (Doc. 39 at 5–6, 16.) Finally, the Complaint alleges that Plaintiff suffered damages as a result of the breach. (Doc. 39 at 16.) Therefore, the undersigned recommends that Plaintiff has stated a claim for breach of contract.

### E. Count Six

Under California law, a contract may be rescinded "[i]f the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds."[4] Cal. Civ. Code § 1689(1). Additionally, Plaintiff must both give notice and restore, or offer to restore, whatever value Plaintiff received from Defendant under the contract, but both requirements can be satisfied by serving a pleading in a lawsuit seeking relief based on rescission. Cal. Civ. Code § 1691.

Plaintiff seeks rescission of the RSPA based on Defendant's alleged fraud. (Doc. 39 at 17.) Plaintiff alleges that Defendant "misrepresented his job history, the reasons why he left a prior prominent position at the College Board, and even his name." (*Id.*) The allegations also include Defendant's failure to disclose his involvement in an investment fraud scheme in a prior business venture. (*Id.* at 4–7.) Plaintiff alleges that it reasonably relied on these false statements and states that, but for the misrepresentations, it would not have hired Defendant and entered into the RSPA. (Doc. 87 at 18; *see also* Doc. 39 at 17.) The undersigned recommends that Defendant's alleged misrepresentations satisfy the requirement for rescission in § 1689(1), and that the service of the complaint satisfies the "notice" and "offer to restore" requirements of § 1691. Thus, the undersigned recommends that Plaintiff has stated a claim for rescission of the RSPA.

---

[4] The RSPA provides for the application of California law. (Doc. 39-2 at 11.)

8

### F. Count Seven

To state a claim for fraud in the inducement under Florida law, Plaintiff must allege the following:

> 1) a false statement concerning a material fact, 2) knowledge by the person making the statement that the representation is false, 3) intent by the person making the statement that the representation will induce another to act upon it, and 4) reliance on the representation to the injury of the other party.

*Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So. 2d 253, 255 (Fla. Dist. Ct. App. 1994).

As stated above, Plaintiff alleges that Defendant "misrepresented his job history, the reasons why he left a prior prominent position at the College Board, and even his name." (Doc. 39 at 17.) Plaintiff alleges further that Defendant's misrepresentations were intended to, and did, induce Plaintiff to hire him. (*Id.* at 18.) Finally, Plaintiff states that hiring Defendant resulted in injury including the costs of investigating the extent of Defendant's disclosure of confidential information, the cost of paying Defendant's salary, and the cost of paying other employees to do the work Defendant was compensated for yet failed to complete. (Doc. 87 at 19.) The undersigned recommends that such allegations are sufficient to satisfy the above elements, and thus, that Plaintiff has stated a claim for fraud in the inducement.

### G. Count Eight

To state a claim for breach of fiduciary duty under Florida law, Plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is

9

the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  For example, an employee has an express fiduciary duty when bound by an employment agreement prohibiting the disclosure of confidential information.  *Sensormatic Elecs. Corp. v. TAG Co. US, LLC*, 632 F. Supp. 2d 1147, 1191 (S.D. Fla. 2008).  Further, an employee may have an implied fiduciary duty when entrusted with confidential information.  *Id*.  "When a person has a fiduciary duty to keep information confidential, disclosing that information is a breach of fiduciary duty." *Id.*

Plaintiff alleges that Defendant was a senior level employee who was subject to a confidentiality agreement, entrusted with confidential information, and assigned responsibility for significant projects.  (Doc. 39 at 2–3.)  Thus, Defendant owed Plaintiff a duty of loyalty.  Plaintiff alleges further that Defendant "breached his duty of loyalty by lying about the work he was performing at Thalamus, and materially misrepresenting the status of significant projects assigned to him." (Doc. 39 at 18.)  The Motion adds that Defendant "breached his fiduciary duty when he disclosed confidential information to third parties" (Doc. 87 at 20), which is adequately alleged in the Complaint and incorporated by reference into Count Eight.  (*See* Doc. 39 at 6–9, 20.)  Regarding damages, the Motion identifies: (1) the cost of investigating Defendant's disclosure of confidential information, (2) Defendant's compensation, and (3) the cost of timely completing the work assigned to Defendant, which he neglected.  (Doc. 87 at 21, 23–24.)  The

10

undersigned recommends that Plaintiff has stated a claim for breach of fiduciary duty.

### III. Relief Requested

Plaintiff requests the following relief: $25,524.00 in compensatory damages for Counts One, Two, and Five; $51,048.00 in exemplary damages for Counts One and Two; a permanent injunction prohibiting Defendant from misusing Plaintiff's confidential information for Counts One and Two; recovery of 31,250 shares of Thalamus stock issued under the RSPA for Counts Six, Seven, and Eight; and disgorgement of $49,962.69 in wages and benefits and $157,013.40 in additional damages for Counts Seven and Eight. (Doc. 87 at 21–24.)  Additionally, Plaintiff intends to seek attorneys' fees and costs in a separate motion. (*Id.* at 25 n.2.) The undersigned will address each request in turn.[5]

#### A.   Compensatory Damages (Counts One, Two, & Five)[6]

The DTSA permits an award of "damages for actual loss caused by the misappropriation of the trade secret." 18 U.S.C. § 1836(b)(3)(B)(i)(I). According to the Declaration of Dr. Jason Reminick in Support of Motion for Default Judgment ("Declaration") (Doc. 87-1), Plaintiff paid $25,524.00 to five internal employees and

---

[5] The undersigned recommends that a hearing on damages is not necessary "[b]ecause the essential evidence relating to damages is before the Court." *Universal Music Corp. v. Latitude 360 Nevada, Inc.*, Case No. 3:15-cv-1052-J-34JRK, 2016 WL 3200087, at *4 (M.D. Fla. May 4, 2016), *report and recommendation adopted*, 2016 WL 3188899 (M.D. Fla. June 8, 2016).

[6] The undersigned recommends that the Court need not undertake redundant analysis for the same relief that is independently available under multiple counts.

one external consultant to investigate and remediate Defendant's misappropriation of Plaintiff's trade secrets, which appears to have been largely successful in preventing greater harm. (Doc. 87-1 at 2–4.) Thus, the undersigned recommends that $25,524.00 be awarded under Count One.

### B.     Exemplary Damages (Counts One & Two)

The DTSA also permits an award of "exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B)," but only "if the trade secret is willfully and maliciously misappropriated." 18 U.S.C. § 1836(b)(3)(C). The undersigned recommends that Plaintiff has set forth factual allegations of willful or malicious misappropriation, or allegations that create a reasonable inference of such. For example, Plaintiff alleges that Defendant stored confidential information on multiple publicly accessible online platforms and that Defendant's actions continued after his termination. (*See* Doc. 39 at 7–9.) Thus, the undersigned recommends that an award of exemplary damages is appropriate under Count One. Moreover, because of the limited amount of damages sought under Count One compared to the overall risk of harm created by Defendant's misappropriation,[7] the undersigned recommends that $51,048.00 (2 x $25,524.00) be awarded, and that a hearing to determine this amount is not necessary.

---

[7] Plaintiff describes the disclosure of its confidential information as "a potential existential threat to its business." (Doc. 87-1 at 2.)

### C.  Injunctive Relief (Counts One & Two)

On August 17, 2020, Plaintiff was granted a Temporary Restraining Order ("TRO") against Defendant pursuant to the DTSA.  (Doc. 11); *see* 18 U.S.C. § 1836(b)(3)(A) ("In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may grant an injunction").  On September 4, 2020, the TRO was converted into a Preliminary Injunction pending the outcome of this case.  (Doc. 33.)  Plaintiff now seeks the entry of a permanent injunction on the same grounds.  (Doc. 87 at 22.)  Thus, the undersigned recommends that the Preliminary Injunction be converted into a permanent injunction under Count One.

### D.  Recovery of Thalamus Stock (Counts Six, Seven, & Eight)

As stated in Count Six above, the undersigned recommends that Plaintiff has established a sufficient basis for the rescission of the RSPA and the recovery of 31,250 shares of Thalamus stock issued thereunder, and that such relief be granted under Count Six.

### E.  Disgorgement and Additional Damages (Counts Seven & Eight)

Plaintiff requests additional monetary relief in the form of the disgorgement of $49,962.69 in compensation paid to Defendant for his entire period of employment and additional damages of $157,013.40 for the costs incurred in completing the work assigned to Defendant, which he failed to perform.

Regarding disgorgement, the Declaration states that "Thalamus paid $48,972.17 in gross wages and $990.52 in medical benefits for a total cost of $49,962.69." (Doc. 87-1 at 8.) Further, it states that one of Defendant's primary duties was an assignment code named "Project X," which received "no work or development" by Defendant. (*Id.* at 5.) Thus, given that Defendant would not have been hired but for fraudulent pretenses, and that he did not perform his primary duties, the undersigned recommends that the disgorgement of his $49,962.69 in compensation is an appropriate remedy under Count Seven. Moreover, disgorgement is an appropriate remedy for a breach of fiduciary duty, and thus, the undersigned recommends that Count Eight provides an alternative basis for such recovery. *See Wallace v. Odham*, 579 So. 2d 171, 175 (Fla. Dist. Ct. App. 1991) (holding that a real estate agent must forfeit his commission due to his breach of fiduciary duty, even though the principal suffered no loss).

Regarding the additional damages of $157,013.40, the Declaration states:

> 20. In an attempt to fix the various complications created, concealed, and exacerbated by [Defendant's] misrepresentations, Thalamus employees worked over 1,000 extra hours. Thalamus calculated the costs for the use of its internal resources by multiplying the additional work done by each Thalamus employee by their hourly rate. Thalamus suffered total additional costs for internal personnel of $42,389.40. . . .
>
> 21. As a result, Thalamus employees and teams also fell behind on other profitable projects and became drained.
>
> 22. [Defendant's] conduct also forced Thalamus to engage its development and engineering colleagues and pay them overtime, as they worked to rebuild

14

> [Defendant's] application from scratch. This included 9 additional personnel, at Thalamus's expense, to accomplish this task. For these services, Thalamus paid a total of $114,624.

(Doc. 87-1 at 6.) The undersigned recommends that Plaintiff has adequately demonstrated its entitlement to such additional damages for the costs of completing Project X under unanticipated time constraints after discovering that Defendant had lied about its progress.

## IV.   Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.   The Motion (**Doc. 87**) be **GRANTED**.

2.   The Clerk of Court be directed to enter judgment in favor of Plaintiff SJ Medconnect, Inc., c/o Grellas Shah LLP, 20400 Stevens Creek Blvd., Suite 280, Cupertino, California 95014, and against Defendant Daniel Boice, #73715-018 FCI Butner Low, Old NC Hwy 75, Butner, North Carolina 27509, in the total amount of $283,548.09, representing $232,500.09 in compensatory damages and $51,048.00 in exemplary damages. Post-judgment interest will accrue at the statutory rate set forth in 28 U.S.C. § 1961.

3.   A permanent injunction be entered consistent with the Preliminary Injunction (**Doc. 33**).

4.   The RSPA be rescinded, and the 31,250 shares of Thalamus stock issued thereunder be cancelled.

**Notice To Parties**

"Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**DONE AND ENTERED** in Jacksonville, Florida, on June 17, 2022.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Daniel Boice
#73715-018
FCI Butner Low
Old NC HWY 75
Butner, NC 27509